IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| v. | : CASE NO.: 1:24-CR-10 |
| TABETHA DUPRIEST, | : |
| Defendant. | : |

## PLEA AGREEMENT

The United States Attorney for the Middle District of Georgia ("United States") and Defendant, Tabetha DuPriest, enter into this plea agreement, agreeing as follows:

(1)

Defendant acknowledges that Defendant has reviewed and discussed the Information against Defendant in this matter with Defendant's attorney and Defendant's attorney has explained to Defendant his understanding of the United States' evidence.

(2)

Defendant understands that Defendant is not required to plead guilty, and that Defendant has the right to plead not guilty and to elect instead to be tried by a jury. Defendant understands that at a jury trial Defendant would enjoy a presumption of innocence, and that the United States would have the burden of proving Defendant's guilt beyond a reasonable doubt. Defendant understands that Defendant would be entitled to the services of an attorney at all stages of such a trial. Defendant understands that Defendant would be entitled to confront and to cross-examine the United States' witnesses, and to present witnesses and evidence in Defendant's own behalf. Defendant understands that Defendant would have the right to testify in Defendant's own behalf,

but that Defendant could not be compelled to do so. Defendant has discussed these rights with Defendant's attorney. Defendant knowingly and voluntarily waives Defendant's right to plead not guilty and to proceed to trial.

The United States and Defendant understand and agree that the Court should consider its sentence in light of the advisory United States Sentencing Guidelines. Defendant therefore agrees that at sentencing the Court may determine any fact pertinent to Defendant's sentence by a preponderance of the evidence and the Court may consider any reliable information, including hearsay. Defendant expressly waives any claim of right to an indictment, trial by jury, and/or proof beyond a reasonable doubt on any factual determinations that pertain to the sentence to be imposed by the Court in this case.

(3)

Being fully cognizant of Defendant's rights, and in exchange for the considerations to be made by the United States as set forth in Paragraph (4) below, Defendant agrees pursuant to Federal Rule of Criminal Procedure 11(c)(1)(A), as follows:

(A)   Defendant is guilty and will knowingly and voluntarily enter a plea of guilty to Count One of the Information which charges Defendant with Making and Subscribing a False Tax Return in violation of Title 26, United States Code, Section 7206(1).

(B)   Defendant fully understands that Defendant's plea of guilty as set forth in Subparagraph (A), above, will subject Defendant to the following penalties on Count One:

- a maximum sentence of up to three years imprisonment;
- a maximum fine of $100,000.00, or both; and
- a term of supervised release of one year.

Defendant further acknowledges that the Court is required to impose a mandatory assessment of $100.00 per count.

(C) Defendant acknowledges and understands that the Court is not bound by any estimate of the probable sentencing range that Defendant may have received from Defendant's attorney, the United States, or the Probation Office. Defendant further acknowledges and agrees that Defendant will not be allowed to withdraw Defendant's plea on the ground that Defendant received an estimated guideline range from the United States, Defendant's attorney, or the Probation Office which is different from the guideline range computed by the Probation Office in the Presentence Investigation Report or different from the guideline range found by the Court to be the correct guideline range.

(D) Defendant understands fully and has discussed with Defendant's attorney that the Court will not be able to determine the appropriate guideline sentence until after a Presentence Investigation Report has been completed. Defendant understands and has discussed with Defendant's attorney that Defendant will have the opportunity to review the Presentence Investigation Report and to object to and challenge any facts reported therein. Defendant understands and has discussed with Defendant's attorney that any objections or challenges by Defendant or Defendant's attorney to the facts or recommendations presented in the Presentence Investigation Report or any disagreement with the Court's rulings on such objections or challenges will not be grounds for withdrawing the plea of guilty. Nothing in this agreement precludes the United States from providing full and accurate information to the Court and the Probation Office for use in calculating the advisory guideline range applicable to Defendant.

(E) Defendant understands and has discussed with Defendant's attorney that after the Court determines the advisory guideline range applicable to Defendant, the Court has the

discretion and authority to impose a sentence that is more severe or less severe than the sentence recommended by the guidelines.

### Waiver of Appeal Rights and Right of Collateral Attack

(F)   Although 18 U.S.C. § 3742 authorizes defendants to appeal their sentences under certain circumstances, Defendant knowingly and voluntarily waives any right to appeal Defendant's sentence, including the amount of any restitution imposed as part of Defendant's sentence. Defendant's sentence appeal waiver does not apply if: (1) the Court imposes a sentence that exceeds the advisory guideline range as that range has been calculated by the Court at the time of sentencing; (2) the Court imposes a sentence that exceeds the statutory maximum; or (3) the United States appeals Defendant's sentence under the authority of 18 U.S.C. § 3742(b). Nothing in this agreement shall deprive the United States of its right to appeal Defendant's sentence, as authorized by 18 U.S.C. § 3742(b). If, however, the United States appeals Defendant's sentence pursuant to this statute, Defendant is released from Defendant's waiver of Defendant's right to appeal altogether.

Defendant waives any right to collaterally attack Defendant's conviction and sentence under 28 U.S.C. § 2255, or to bring any other collateral attack, except that Defendant shall retain the right to bring a claim of ineffective assistance of counsel. This provision shall not bar the filing of a petition for writ of habeas corpus, as permitted by 28 U.S.C. § 2241.

Defendant waives any right to file a motion for modification of sentence, including under 18 U.S.C. § 3582(c)(2), except in the event of a future retroactive amendment to the sentencing guidelines which would affect Defendant's sentence. Nothing in this paragraph is intended to limit the Defendant's right to file a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).

4

Defendant understands and acknowledges that the waivers outlined herein may result in the dismissal of any appeal or collateral attack Defendant might file challenging Defendant's conviction or sentence. If Defendant files a notice of appeal or collateral attack, notwithstanding this agreement, Defendant agrees that this case shall, upon motion of the United States, be remanded to the Court to determine whether Defendant is in breach of this agreement and, if so, to permit the United States to withdraw from the plea agreement.

(G)   Defendant agrees to provide complete, candid, and truthful statements to law enforcement officers regarding Defendant's involvement and the involvement of all others involved in the charges alleged in the present Information as well as any and all criminal violations about which Defendant has knowledge or information and that such information provided will be pursuant to and covered by this agreement. Defendant further agrees to provide complete, candid, and truthful testimony regarding such matters in any proceeding. Defendant understands that this agreement does not require Defendant to implicate any particular individual or individuals or to "make a case." Rather, this agreement requires Defendant to be truthful and to testify truthfully whenever called upon.

(H)   Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 ordinarily limit the admissibility of statements made by a defendant during the course of plea discussions or plea proceedings. Defendant knowingly and voluntarily waives the protections of these rules by entering into this plea agreement. If, after entering into this plea agreement, Defendant fails to plead guilty, or the plea of guilty is later withdrawn, Defendant's statements in connection with this plea, including the stipulation of fact set forth below in paragraph (8), and any leads derived therefrom, shall be admissible for any and all purposes.

(I)     Defendant further agrees that all evidence, except biological evidence as defined in 18 U.S.C. § 3600A, if any, obtained in this investigation and prosecution may be destroyed or returned to its rightful owner at the conclusion of this case.

(J)     The United States and Defendant hereby agree that any breach of this agreement by Defendant occasioned by a failure to cooperate, by withholding information, giving of false information, perjury, or failure to testify in any judicial proceeding in connection with the individuals, matters, and transactions referred to in the Information, would: (a) not relieve Defendant of Defendant's plea of guilty; (b) permit the United States to reinstate and proceed with prosecution on any other charges arising from the matters referred to in this Information; (c) permit the United States to instigate and proceed with the prosecution of any other offenses arising from a breach of this agreement, including perjury, false declaration, false statement, and/or obstruction of justice; and (d) permit the United States to utilize against Defendant in any subsequent judicial proceeding any and all statements made by Defendant. If a legitimate issue arises as to whether or not there has been a breach of this agreement, said question shall be determined by the United States District Court for the Middle District of Georgia. The burden of establishing such a breach shall be upon the United States and shall be established by a preponderance of the evidence. The Federal Rules of Evidence shall not apply in any hearing to establish such a breach, but evidence shall be admitted and excluded at the Court's discretion.

(K)     Defendant agrees that if any restitution is ordered by the Court under 18 U.S.C. § 2259, the amount of restitution ordered by the Court shall include Defendant's total offense conduct. Defendant agrees and understands that any payment schedule imposed by the Court is without prejudice to the United States to take all actions and take all remedies available to it to collect the full amount of the restitution.

Defendant agrees to pay restitution in the amount of $22,482.22 to the Internal Revenue Service, pursuant to 18 U.S.C. § 3663(a)(3). Defendant agrees that the total amount of restitution reflected in this agreement results from Defendant's fraudulent conduct.

The total amount of restitution consists of the following:

| Tax Year | Amount to be Credited to Tax |
|---|---|
| 2016 | $4,895.27 |
| 2017 | $4,928.83 |
| 2018 | $4,945.99 |
| 2019 | $2,778.54 |
| 2020 | $4,933.59 |
| Total: | $22,482.22 |

Defendant agrees to pay Title 26 interest on the restitution amount; interest runs from the last date prescribed for payment of the relevant tax through the date of sentencing. The government will provide an updated interest figure at sentencing.

Defendant agrees that restitution is due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States. If the Court imposes a schedule of payments, Defendant agrees that the schedule of payments is a schedule of the minimum payment due, and that the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full. The IRS will use the amount of restitution ordered as the basis for a civil assessment under 26 U.S.C. § 6201(a)(4). Defendant does not have the right to challenge the amount of this restitution-based assessment. See 26 U.S.C. § 6201(a)(4)(C). Neither the existence of a restitution payment schedule nor

Defendant's timely payment of restitution according to that schedule will preclude the IRS from immediately collecting the full amount of the restitution-based assessment.

Defendant is entitled to receive credit for restitution paid pursuant to this plea agreement against those assessed civil tax liabilities due and owing for the same periods for which restitution was ordered. Defendant understands and agrees that the plea agreement does not resolve the Defendant's civil tax liabilities, that the IRS may seek additional taxes, interest and penalties from Defendant relating to the conduct covered by this plea agreement and for conduct relating to another time period, and that satisfaction of the restitution debt does not settle, satisfy, or compromise Defendant's obligation to pay any remaining civil tax liability. Defendant authorizes release of information to the IRS for purposes of making the civil tax and restitution-based assessments.

Defendant understands that she is not entitled to credit with the IRS for any payment until the payment is received by the IRS.

If full payment cannot be made immediately, Defendant agrees to make a complete and accurate financial disclosure to the IRS on forms prescribed by the IRS (including, but not limited to, IRS Form 433-A and Form 433-B, as appropriate), and to disclose to the IRS any and all additional financial information and financial statements provided to the probation office. Defendant also agrees to provide the above-described information to the probation office.

If Defendant makes a payment of the restitution agreed to in this agreement prior to sentencing, the payment will be applied as a credit against the restitution ordered pursuant to this agreement.

Defendant agrees that the restitution, restitution judgment, payment provisions, and collection actions of this plea agreement are intended to, and will, survive Defendant,

notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. Defendant further agrees that any restitution collected and/or distributed will survive Defendant, notwithstanding the abatement of any underlying criminal conviction execution of this agreement.

The restitution described above shall be paid through the Office of the Clerk of the District Court by bank or cashier's check or money order made payable to the "Clerk, United States District Court."

The parties will jointly recommend that as a condition of probation or supervised release, Defendant will notify the Financial Litigation Unit (FLU), United States Attorney's Office, of any interest in property obtained, directly or indirectly, including any interest obtained under any other name, or entity, including a trust, partnership, or corporation, after the execution of this plea agreement until the fine or restitution is paid in full.

The parties will also jointly recommend that as a condition of probation or supervised release, Defendant will notify the FLU, United States Attorney's Office, before Defendant transfers any interest in property owned directly or indirectly by Defendant, including any interest held or owned under any other name or entity, including trusts, partnerships and/or corporations.

In addition, Defendant agrees that Defendant will make no future transfer of assets for the purpose of evading or defeating financial obligations that are created by this agreement or that may be imposed upon Defendant by the Court.

(4)

In exchange for the consideration set forth in Paragraph (3) above, the United States agrees as follows:

(A)     The United States will accept the plea of guilty by Defendant as provided in Paragraph (3)(A), above, in full satisfaction of all possible federal criminal charges, known to the United States Attorney at the time of Defendant's guilty plea, which might have been brought against Defendant solely in this district.

(B)     If Defendant cooperates truthfully and completely with the United States, including being debriefed and providing truthful testimony at any proceeding resulting from or related to Defendant's cooperation, then the United States will make the extent of Defendant's cooperation known to the sentencing court. If Defendant is not completely truthful and candid in Defendant's cooperation with the United States, Defendant may be subject to prosecution for perjury, false statements, obstruction of justice, and/or any other applicable charge. If Defendant's cooperation is completed before sentencing, the United States will consider whether such cooperation qualifies as "substantial assistance" pursuant to 18 U.S.C. § 3553(e) and/or U.S.S.G. § 5K1.1 and warrants the filing of a motion at the time of sentencing recommending a downward departure from the applicable guideline range. If Defendant's cooperation is completed after sentencing, the United States will consider whether such cooperation qualifies as "substantial assistance" pursuant to Federal Rule of Criminal Procedure 35(b) and warrants the filing of a motion for reduction of sentence. In either case, Defendant understands that the determination as to whether Defendant has provided "substantial assistance" rests solely with the United States. Any good faith efforts on the part of Defendant that do not substantially assist in the investigation or prosecution of another person who has committed a crime will not result in either a motion for downward departure or a Rule 35 motion. In addition, should Defendant fail to cooperate truthfully and completely with the United States, or if Defendant engages in any additional criminal conduct, Defendant shall not be entitled to consideration pursuant to this paragraph.



(C) Pursuant to U.S.S.G. § 1B1.8, the United States agrees that any self-incriminating information which was previously unknown to the United States and is provided to the United States by Defendant in connection with Defendant's cooperation and as a result of Defendant's plea agreement to cooperate will not be used in determining the applicable guideline range. Further, the United States agrees not to bring additional charges against Defendant, with the exception of charges resulting from or related to a violent felony, as defined in 18 U.S.C. § 924(e)(2)(B), based on any information provided by Defendant in connection with Defendant's cooperation, which information was not known to the United States prior to said cooperation. This does not restrict the United States' use of information previously known or independently obtained for such purposes.

(D) The United States agrees that it will file a motion requesting that Defendant's offense level be reduced by one level under U.S.S.G. § 3E1.1(b) for timely notifying the United States of Defendant's intention to enter a guilty plea, but Defendant understands that whether Defendant is entitled to any offense-level reduction under U.S.S.G. § 3E1.1 is entirely within the Court's discretion. The United States reserves the right to furnish the Court with full and accurate information and/or argue against the two-level reduction for acceptance of responsibility if Defendant engages or has engaged in conduct inconsistent with accepting responsibility, as defined in U.S.S.G. § 3E1.1 and its commentary.

(5)

**Collection of Financial Obligations**

In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the Defendant agrees fully to disclose all assets in which she has any interest

or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party.

The Defendant will promptly submit a completed financial statement to the U.S. Attorney's Office, in a form it provides and as it directs. The Defendant promises that her financial statement and disclosures will be complete, accurate and truthful.

The Defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report on her in order to evaluate the Defendant's ability to satisfy any financial obligation imposed by the Court.

(6)

Nothing herein limits the sentencing discretion of the Court.

(7)

This agreement constitutes the entire agreement between Defendant and the United States, and no other promises or inducements have been made, directly or indirectly, by any agent of the United States, including any Assistant United States Attorney, concerning any plea to be entered in this case. In particular, Defendant acknowledges and agrees that no one has promised Defendant that the Court will impose any particular sentence or a sentence within any particular range in order to induce this plea. In addition, Defendant states that no person has, directly or indirectly, threatened or coerced Defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

Defendant understands that this agreement binds only the Office of the United States Attorney for the Middle District of Georgia, and that the agreement does not bind any other component of the United States Department of Justice, nor does it bind any state or local prosecuting authority, unless expressly stated herein.

(8)

As an aid to this Court, the United States and Defendant, by and through Defendant's attorney, enter into the following Stipulation of Fact. This stipulation is entered into in good faith with all parties understanding that the stipulation is not binding on the Court. Under U.S.S.G. § 6B1.4(d) (Policy Statement), this Court may accept this stipulation as written or, in its discretion, with the aid of the Presentence Investigation Report, determine the facts relevant to sentencing.

Subject to the above paragraph, the United States and Defendant stipulate and agree that Defendant is in fact guilty of the offense to which Defendant is pleading guilty, that the following facts are true and correct, and that the United States at trial could prove the following facts beyond a reasonable doubt:

The Defendant, Tabetha DUPRIEST, served as the Tax Commissioner for Worth County, Georgia since 2001, as well as the President of the Georgia Association of Tax Officials from 2019-2021. In her role as Tax Commissioner, DUPRIEST oversaw the collection of motor vehicle taxes and property taxes of four municipalities within Worth County. For that work, she earned approximately $80,000 in wages a year and received a Form W-2 from the Worth County Board of Commissioners. In addition to her salary, each city within the county separately contracted with DUPRIEST to collect city taxes, and she is paid separately by each city for that work. An investigation conducted by the Federal Bureau of Investigation (FBI) and Internal Revenue Service (IRS) revealed that DUPRIEST failed to declare any of the additional income she had received from her independent contracts with the four municipalities in Worth Country, Georgia on her federal tax returns since she became Tax Commissioner until 2022.

On or about November 3, 2016, DUPRIEST opened a Renasant Bank account ending in -0640 under the name, "Worth County Tax Commissioner – Tabetha DuPriest". DUPRIEST was

the sole signatory on the account. On the account signature card, DUPRIEST had selected the account as a "Public depository" account for Worth County, Georgia and provided the Tax ID number for the Worth County Tax Office account. On or about February 16, 2022, a Renasant Bank investigator provided information to the Federal Bureau of Investigation (FBI), alleging that it appeared DUPRIEST had been utilizing the account for personal expenses for approximately five (5) years. The Renasant Bank manager contacted DUPRIEST and informed her she should not utilize the account for personal activity, as it was set up as a business account. DUPRIEST explained that the account is actually her personal account set up for funds that are owed to her, which she then utilizes to pay expenses. On or about February 15, 2022, DUPRIEST closed the account ending in -0640.

FBI subsequently obtained records from Renasant Bank for account ending in -0640. The total amount of money deposited into -0640 during its lifetime (11/2016-02/2022) was approximately $132,591, including deposits from the four municipalities and non-municipality deposits. The primary sources of deposits into the account show abbreviations for Worth County Tax Office ("WCTO"), FIFA fees, "Vendor comp", and payments from the four municipalities (Sylvester, Poulan, Warwick, and Sumner) of Worth County. Money from the municipalities of Worth County contribute the majority of the funds deposited into the account, with the city of Sylvester being the largest single contributor. Furthermore, during the lifetime of the account, there were approximately 109 non-municipal deposits into the account, totaling approximately $49,878. DUPRIEST used the funds in the bank account to pay for personal expenses, such as vacations, travel, and personal shopping.

On or about November 17, 2022, the FBI interviewed DUPRIEST. DUPRIEST explained that as Worth County Tax Commissioner, she oversaw the tax collection of the four (4)

municipalities within Worth County: Sylvester, Poulan, Warwick, and Sumner. Municipal Tax Collection (MTC) is a process outlined in Georgia law where the County Tax Commissioner (TC) is contracted by individual cities within their county to collect the city's taxes. Both Worth County and DUPRIEST are paid by the municipalities. The fees associated with the MTC in Worth County are determined at a city council meeting at an agreed upon amount. The most recent agreement with each city is as follows:

1. Sylvester pays DUPRIEST $16,000/year and Worth County $8,000/year, and
2. Sumner/Poulan/Warwick each pay DUPRIEST $1,000/year and Worth County $200.

These payments are paid directly to DUPRIEST, and are in addition to her state-based salary provided by Worth County. The agreements signed and entered into between each municipality and DUPRIEST provide: "DuPriest will be solely responsible for the payment for any taxes, social security Medicare, or any other federal or state required deductions for the amount received."

On or about May 17, 2023, the FBI again interviewed DUPRIEST. DUPRIEST explained the Renasant bank account ending in -0640 was her own personal expense account, and that none of the money in the account belonged to Worth County. She received funds through this account from the municipalities pursuant to the MTC agreement process, or from other vendors for her services. The FIFA fees, Sales and Use Vendor Compensation fees, and other similar fees that DUPRIEST collects from her tax position are not reported on her W-2 from Worth County. Rather, DUPRIEST is required to report these fees as self-employment income on her yearly tax returns. DUPRIEST claimed she reported the money obtained from the municipal tax collection contracts as self-employment with the IRS, claiming that "the small fees, I don't really report. But all of my city contract fees I report as self-employment tax." DUPRIEST further explained that she

documented the municipality deposits on her campaign finance disclosures. DUPRIEST denied reporting any of the other non-municipality deposits into account ending in -0640.

The FBI and IRS reviewed the aforementioned Renasant bank account ending in -0640 records, DUPRIEST's personal bank account ending in -0922, as well as other records from the City of Sylvester and an accounting firm in Sylvester, Georgia, among other items, which determined that DUPRIEST had received $99,293.65 from the four (4) municipalities in Worth County, Georgia that she did not report as income, as required, on her tax returns for years 2016 through 2021. The below chart summarizes the tax year, the reported income, the unreported income, and the total corrected income, as it relates to DUPRIEST's unreported income from the four municipalities and her filed tax returns:

| Tax Year | Income Per Return Filed | Unreported Income | Corrected Total Income |
|---|---|---|---|
| 2016 | $78,251 | $17,483.10 | $95,734.10 |
| 2017 | $69,780 | $17,602.97 | $87,382.97 |
| 2018 | $75,002 | $17,664.26 | $92,666.26 |
| 2019 | $87,008 | $9,923.34 | $96,931.34 |
| 2020 | $77,917 | $17,619.98 | $95,536.98 |
| 2021 | $85,434 | $19,000* | $104,434 |

With respect to 2021, DUPRIEST failed to include the income she received from the municipalities on her initial Form 1040 for tax year 2021. As such, the return was false at the time it was filed. After her initial interview with the FBI, DUPRIEST filed an amended Form 1040X for tax year 2021 and reported the additional $19,000 she received from the municipalities as income. However, DUPRIEST did not amend any other prior tax years. The aforementioned unreported income resulted in an actual tax loss of $22,482.22. Because she had initially failed to include

such income on her Form 1040 for tax year 2021, her total intended loss shall include the additional $5,442 that she subsequently reported on Line 11 of her amended Form 1040X. Accordingly, incorporating such intended loss, the total tax loss for tax years 2016 through 2021 as a result of the unreported municipal deposits into DUPRIEST's bank account is $27,924.22.

At the time DUPRIEST personally filed the above-referenced Form 1040 tax returns in Worth County, Georgia, and on or about March 9, 2021, she knew they contained the aforementioned materially false items. Specifically, the 2020 Form 1040 made and subscribed by DUPRIEST claimed the materially false item of total income of $77,917 (IRS Form 1040, Line 9) and adjusted gross income of $77,917 (IRS Form 1040, Line 11).

On or about December 6, 2023, the FBI and IRS interviewed DUPRIEST. DUPRIEST explained she had received additional income from the four (4) municipalities of Worth County since 2001, when she took office as the Tax Commissioner. In 2016, the payments, particularly from Sylvester, significantly increased. Prior to the payments increasing, DUPRIEST stated she did not report that additional income from the municipalities to the IRS. DUPRIEST admitted she deposited the checks from the municipalities into her bank account, which she had sole access to and control of. DUPRIEST did not request Form 1099s from the municipalities, so she did not declare the income. DUPRIEST later admitted she did not declare the additional income from the municipalities from 2016-2018, and 2020. With respect to 2019, DUPRIEST stated that Worth County attempted to add the additional income to DUPRIEST's payroll for part of the year, which caused various issues and shortly thereafter ceased, with the County requiring her additional payments to be handled via Form 1099s. DUPRIEST also stated that on her 2021 tax return, she did not initially declare the additional income she received from the municipalities, but she later filed an amended return for that year after her initial interview with the FBI. Furthermore,

DUPRIEST stated that she reported all of her additional income (municipal and non-municipal) on her campaign finance disclosures, but she did not report the additional income on her tax returns. DUPRIEST admitted she did wrong by receiving additional income and not declaring it to the IRS, but she wanted to make things right.



(9)

## ACCEPTANCE OF PLEA AGREEMENT

Defendant understands and has fully discussed with Defendant's attorney that this agreement shall become effective only upon the Court's acceptance of this agreement and the Court's acceptance of the plea of guilty by Defendant.

SO AGREED, this 13th day of March, 2024

                          PETER D. LEARY
                          UNITED STATES ATTORNEY

BY: _____
        MATTHEW REDAVID
        ASSISTANT UNITED STATES ATTORNEY

I, Tabetha DuPriest, have read this agreement and had this agreement read to me by my attorney, Manny Arora. I have discussed this agreement with my attorney and I fully understand it and agree to its terms. Defendant acknowledges that Defendant authorized and consented to the negotiations between the United States and the attorney for Defendant that led to this agreement.

_____
TABETHA DUPRIEST
DEFENDANT

I, Manny Arora, attorney for Defendant Tabetha DuPriest, have explained the Information and the United States' evidence received through discovery and my investigation of the charge to Defendant. I believe Defendant understands the charge against Defendant and the evidence that would be presented against Defendant at a trial. I have read this agreement, have been given a copy of it for my file, and have explained it to Defendant. To the best of my knowledge and belief, Defendant understands this agreement.

_____
MANNY ARORA
ATTORNEY FOR DEFENDANT